UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Patrick D. Kallenbach, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 CV 50120 |
| | ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Patrick D. Kallenbach brings this action under 42 U.S.C. §405(g), challenging the denial of social security disability benefits. At issue is whether the administrative law judge was justified in discounting plaintiff's allegations of persistent and severe back pain.

### BACKGROUND

In June 2012, plaintiff filed his disability applications, claiming back pain as his chief complaint.[1] He was then 48 years old and had worked for a number of years as a fork truck operator, truck loader, and general laborer, among other jobs, including a ten-year stint as a body shop mechanic and a five year stint as a laborer in a warehouse. R. 206, 258.

On September 19, 2014, a hearing was held before the administrative law judge ("ALJ"). Plaintiff testified about how his ongoing pain would make it difficult to work. To quote from one of several descriptions, plaintiff stated the following:

> Well, I've been having just terrible hip and back pain, numbness, and when I go to lift my leg up some of the times, my leg won't lift high enough and I'll trip on steps and sometimes rocks. Just a terrible back pain, shoots down my legs, down to my feet and sometimes straight up my back and my muscles tighten up so tight from all that it gives me headaches, just terrible pain, back pain and leg pain. Constant

---

[1] This appeal focuses on his back-related pain, but it should be noted that he has alleged other issues, perhaps less serious, including sleep apnea, obesity, and carpal tunnel syndrome.

1

> pretty much, I'm in pain 24/7, sometimes it gets really bad where I have to try to crawl. There's been times when I tried to call and stand up just to go to the bathroom and can't do it. It's just terrible. It gets frustrating.

R. 37-38. He testified that he even had pain while sitting and that it intrudes while he is doing tasks. R. 42, 45 (he cannot "watch one movie without getting up or hurting so bad"). The ALJ asked plaintiff whether his doctor had recommended surgery or other treatments, and plaintiff stated that his doctor "mentioned surgery" and was "talking about sending [him] to a pain doctor and then a neurologist." R. 47.

Dr. Ronald Semerdjian testified as the impartial medical expert.[2] His testimony proved to be central to the ALJ's decision. Although Dr. Semerdjian acknowledged that plaintiff's back symptoms had existed "for a long period of time," he also noted that "[w]hat's absent is a pattern of physical findings, objective physical findings." R. 50. He then reviewed the medical record in some detail, pointing out many normal or mild findings on exams or tests, such as plaintiff being able to walk 50 feet without any assistive device and having a normal heel to toe gait. He also noted that there were some abnormal findings, such as limitation in range of motion of the lumbar spine and some positive straight leg raising tests. His conclusion was as follows:

> I think [plaintiff] would be capable of sitting six of eight hours, standing and walking, if I went purely on the neurologic exams, I'd have to give him six of eight. If I include the history, I'd have to say two of eight.

R. 54. There was a brief follow-up by about the second half of the opinion and the reference to plaintiff's "history." Dr. Semerdjian stated that plaintiff's ongoing pain was "just something not supported by significant objective evidence." R. 54.

Plaintiff's counsel then asked Dr. Semerdjian about the opinion of Dr. Julio Santiago, plaintiff's treating physician in 2014, who completed a two-page form opining about various limitations of plaintiff (*e.g.* missing four days a month of work) that, if credited, would mean that

---

[2] He is board certified in internal medicine and pulmonary disease. R. 48.

plaintiff was disabled. Dr. Semerdjian identified two points of disagreement. First, he believed that Dr. Santiago overestimated plaintiff's lifting abilities. Unlike Dr. Santiago, Dr. Semerdjian believed that, "if [plaintiff has] that much discomfort in his back, lifting 50 pounds occasionally and 25 frequently [] is beyond his capacity." R. 58. Second, he noted that Dr. Santiago listed lumbar disc disease as plaintiff's impairment but then claimed that plaintiff had fingering and handling limitations. Dr. Semerdjian explained: "I can't draw any relationship between lumbar disc disease and compromise in one's ability to feel, handle." R. 59.

On November 24, 2014, the ALJ found plaintiff not disabled. The ALJ found that plaintiff had the severe impairments of "degenerative disc disease; bilateral osteoarthritis of the hips; [and] allegations of chronic pain and obesity." R. 12. The ALJ found that plaintiff had the residual functional capacity to do light work. The basic theory, espoused by both the ALJ and Dr. Semerdjian, was that plaintiff's claim of "extreme pain" was "disproportionate" to the "generally mild to moderate diagnostic findings with relatively benign clinical examinations." R. 20. The other main rationale was that plaintiff's treatment had been conservative and limited.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

In this appeal, plaintiff raises a series of arguments attacking, in one way or another, the ALJ's central finding that plaintiff's pain allegations were not credible. Plaintiff alleges that he has "consistent, continuous, and severe pain all the time"—an assertion which, if believed, would mean he could not work a full-time job. The Government argues that the ALJ properly found that these allegations were essentially exaggerated and unbelievable given the objective evidence. In simplified terms, this case pits objective evidence (allegedly mild) against subjective allegations (allegedly severe).

This is not an uncommon scenario, nor an easy question to answer.[3] ALJs follow a well-known two-step process in assessing pain allegations. *See* 20 C.F.R. §404.1529. At step one, the ALJ must determine whether there is objective evidence showing that a claimant has a medical impairment that "could reasonably be expected to produce the pain." *Id.* This means that "statements about [a claimant's] pain or other symptoms will not alone establish" disability. *Id.* However, if the ALJ finds that the claimant does have such an impairment, then the inquiry at step two shifts to the degree of the pain, specifically its intensity and persistence. At this stage,

---

[3] *See* Carolyn A. Kubitschek and Jon C. Dubin, *Social Security Disability: Law and Procedure in Federal Court*, at p. 463 (2016 Ed.) ("Despite the significance of pain to proving disability, pain is a complicated legal and factual issue in Social Security cases. The complexity [] derives in part from the complexity of pain. []Back pain, a common impairment in people seeking disability benefits, is particularly hard to describe and quantify.").

4

the ALJ should consider all the evidence, including both objective and subjective evidence, as well as the medical opinions and activities of daily living. Although objective evidence may still be considered at this stage, it may not be used by itself to find that a claimant's allegations are *not* credible. The regulation states the following: "we will not reject your statements about the intensity and persistence of your pain [] solely because the available objective medical evidence does not substantiate your statements." *Id.* at (c)(2).[4] The word "solely" is important. *See Promega Corp. v. Applied Biosystems, LLC*, No. 13 C 2333, 2013 U.S. Dist. LEXIS 154690, *31 (N.D. Ill. Apr. 4, 2013).

This leads to plaintiff's first and most general argument, which is that the ALJ violated this rule. The Court is not persuaded. To be sure, the ALJ relied heavily on the objective evidence, as it was discussed often and at length. The large emphasis given to this one line of argument, by both the ALJ and the medical expert, does raise a question as to whether the ALJ may have been influenced by a skepticism about unsupported pain allegations. However, because the ALJ did not exclusively rely on this evidence and did address other types of evidence, this argument standing alone is not enough for remand.

The Court next considers plaintiff's remaining three arguments, which focus on the ALJ's other rationales supposedly providing additional support to the conclusions derived from the objective evidence. Plaintiff first argues that the ALJ failed to follow the treating physician rule in giving Dr. Santiago's opinion "limited" weight. The Court agrees. A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and is consistent with other substantial evidence in the record. 20 C.F.R. §404.1527(c)(2); *Moore v. Colvin*, 743

---

[4] Numerous Seventh Circuit opinions have criticized ALJs for violating this rule. *See, e.g., Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) (an ALJ many not simply reject pain allegations because they are "unsupported by significant physical and diagnostic examination results"); *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report").

5

F.3d 1118, 1127 (7th Cir. 2014). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue¸* 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2). *Meuser v. Colvin*, Case No. 16-1052, Slip Opinion at 13 (7th Cir. Oct. 3, 2016) (contention that ALJ followed the checklist is "frivolous" because the ALJ "did not mention any [checklist factors] when evaluating" the medical opinion); *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"). Failure to apply checklist is reversible error. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (ALJ disregarded checklist); *Moss*, 555 F.3d at 561 ("the choice to accept one physician's opinions but not the other's was made by the ALJ without any consideration of the factors outlined in the regulations"). Similarly, ALJs commit reversible error by simply stating that they considered the checklist without showing in their decisions that they did, in fact, consider them. *See Campbell*, 627 F.3d at 308.

Here, the ALJ failed to follow this process. The ALJ did not explicitly follow the first step, nor did he explicitly analyze the checklist in the second step. It is true that the ALJ did not ignore Dr. Santiago's opinion and provided several arguments to justify the conclusion. This is thus not a case where the ALJ conducted a perfunctory analysis. However, despite this fact, the Court takes the view that an explicit analysis is still required. *See Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, *8-9 (N.D. Ill. Aug. 4, 2015). Even if the Court allowed an implicit analysis, it would still remand because the ALJ failed to address several issues.

The ALJ never considered, even implicitly, the length and nature and extent of the treatment relationship (the first two factors). In reviewing the record, this Court is not clear how

many visits plaintiff had with Dr. Santiago, nor the time parameters of the relationship, although it seems to have begun in the summer of 2014. Likewise, the ALJ never discussed the degree of specialization (fifth factor), neither as it pertains to Dr. Santiago or Dr. Semerdjian. The record is undeveloped and unanalyzed regarding these factors. It may be that, after further facts are developed, these factors provide more support for the ALJ's opinion. But either way, it is important that they be explicitly considered.

As for the remaining factors, the ALJ and medical expert did point to two alleged inconsistencies in Dr. Santiago's opinion, thus arguably invoking the third and fourth factors (supportability and consistency). But even here, the analysis is not clearly spelled out. First, Dr. Semerdjian's conclusion that Dr. Santiago overestimated plaintiff's lifting abilities is based on the assumption that plaintiff had "much discomfort," which seems to support plaintiff's theory of the case and to be in tension with Dr. Semerdjian's overarching belief that plaintiff's pain was not severe. Second, the ALJ and medical expert concluded that degenerative disc disease could never cause fingering or handling problems. This conclusion may be valid, though it was not explained. This point aside, the Court notes that the record contains evidence that plaintiff had recurring wrist problems. *See* R. 15 ("He disclosed a history significant for carpal tunnel surgery"). It is possible that Dr. Santiago's conclusion was based on this evidence. Third, the ALJ discounted Dr. Santiago's opinions because he relied on plaintiff's "subjective reports of pain alone." However, the record fails to support that Dr. Santiago relied *only* on self-reports or whether he merely relied on them *along with* objective evidence such as his physical examinations. It is not improper for a treating physician to consider a patient's history and self-reports as one part of the overall assessment. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015); *Korzeniewski v. Colvin*, 2014 U.S. Dist. LEXIS 51004, *21 (N.D. Ill. Apr. 14, 2014 ("All

diagnoses, particularly those involving mental health conditions, require consideration of the claimant's subjective symptoms."); *Ludwig v. Colvin*, 2014 U.S. Dist. LEXIS 42289, *30 (N.D. Ill. Mar. 27, 2014) (error to reject treating physician opinion when doctor relied upon more than just subjective complaints). Insofar as this Court can tell, neither Dr. Santiago nor any of the many other treating doctors ever accused plaintiff of malingering. Fourth, the ALJ stated that he believed Dr. Santiago's opinion was based on his "probable wish to assist his patient." This argument does not appear to be based on any concrete evidence but seems to rest more on the generalized assumption that all treating physicians are prone to bend the evidence in favor of their patients. However, this assumption is counter to premise of the treating physician rule, which is that (all other things being equal) a treating physician's opinion deserves *greater* weight than other opinions. If accepted, the ALJ's rationale would flip this foundational assumption on its head.

Plaintiff's second argument attacks the ALJ's conclusion that plaintiff's treatment history was inconsistent and conservative. Plaintiff complains that the ALJ failed to fully explore his explanations (lack of insurance and financial problems) for this history. The Court agrees with this argument. It is well-established that an ALJ has a duty to first ask a claimant about, and then explore a claimant's explanations regarding, treatment inconsistencies. *See Pierce*, 739 F.3d at 1050 (an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin"); *Craft*, 539 F.3d at 679 ("although the ALJ drew a negative inference as to Craft's credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine.").

8

The ALJ here concluded that plaintiff's treatment was "limited and conservative," consisting of "some intermittent encounters with a primary care source and several emergency room visits." R. 21. The ALJ believed that plaintiff "managed" with medications alone. The ALJ rejected plaintiff's explanation for his inconsistent treatment based on the following reasoning:

> There is suggestion that limited finances and a lack of insurance prevented him from getting more specialized treatment, and while the undersigned is certainly sympathetic to problems accessing appropriate care, the claimant now has Medicaid coverage. Although the claimant attended a neurosurgical consultation, he was not deemed a candidate, and other more conservative interventions were recommended. However, the claimant has not yet pursued aqua-therapy, weight loss or met with a pain management specialist as has been suggested. Furthermore, the frequency of the claimant's emergency room visits has decreased significantly, thus suggesting that he was using the emergency room in lieu of a primary care source. One would expect given the claimant's reports of intractable pain that he would require frequent emergency treatment for pain control independent of his insurance status; however, there is only one such encounter since he got a medical card in late 2013.

R. 21. Plaintiff asserts that the ALJ's main argument—that plaintiff got Medicaid coverage—is flawed because he "only first began receiving Medicaid [on] May 12, 2014" and that, before this time, he had "no money, no insurance and did not even have enough finances for his child support" and that, after this time, he became "very active" in seeking treatment. Dkt. #10 at 12. The argument is that for the majority of the treatment period (which according to the ALJ's summary of the evidence was from January 2008 until sometime around August 2014) plaintiff had no such coverage. The Court finds this argument persuasive, and the Government's response brief offers no substantive reply.

Related to the above point, the Court notes another point of concern with the ALJ's reasoning. The ALJ distinguished between frequent emergency room visits before Medicaid coverage versus an alleged drop-off in visits thereafter. The ALJ then concluded that this showed that plaintiff's pre-Medicaid emergency room trips were not evidence of serious pain. There are

9

several flaws in this reasoning. For one thing, the fact that plaintiff went to the emergency room buttresses his general claim that he lacked insurance.[5] For another thing, the ALJ assumed that a person with serious ongoing pain would be a frequent visitor in the emergency room. But as the Seventh Circuit has explained, this is a dubious assumption. *Schomas v. Colvin*, 732 F.3ed 702, 709 (7th Cir. 2013) ("a person suffering continuous pain might seek unscheduled treatment if that pain unpredictably spikes to a level which is intolerable, but otherwise why would an emergency-room visit be sensible? Unless emergency treatment can be expected to result in *relief*, unscheduled treatment in fact makes no sense") (emphasis in original).

One final point about this line of argument. The ALJ's explanation quoted above arguably gives the impression that plaintiff did not seek out any serious treatment. But as the ALJ's opinion itself summarizes, plaintiff was taking a number of medications.[6] Yet, in the analysis portion of the opinion, the ALJ glossed over the fact that multiple doctors continued to prescribe a slew of medications. Moreover, the ALJ also asserted, in conclusory fashion, that plaintiff was managing adequately on these medications. But it is not clear what evidence supported this conclusion. The ALJ did not cite to any doctor's note, and plaintiff himself did not make such a statement—just the opposite, he consistently complained about the pain.

Plaintiff's third argument concerns a less prominent part of the ALJ's decision. Plaintiff argues that the ALJ improperly discounted the third party statements from his fiancé and friend. The ALJ explained this decision as follows:

---

[5] This point is further supported by the narrative portion of the ALJ's opinion, which described how plaintiff told doctors that he had problems getting treatment. *See* R. 17 ("He did not follow up with a neurology referral due to loss of job and lack of insurance"); R. 18 (plaintiff "admitted that he did not have a primary care physician because no one would accept him without insurance"). These statements were made in real time during doctor visits and not merely raised for the first time at the administrative hearing.

[6] *See, e.g.* R. 17 ("He was given a Medrol Dosepak and Vicodin for an acute exacerbation of low back pain"); R. 18 (plaintiff was told "to take Naproxen Flexeril and use ice daily"); R. 18 ( "Flexeril and tramadol were refilled"); R. 18 ("The claimant was provided prescriptions for Norco and Flexeril and discharged home"); R. 18 ("Dr. Santiago assessed degenerative disc disease, provided a Toradol/Norflex injection and prescribed a combination of gabapentin, tramadol and Flexeril").

> The claimant's fiancée Barbara Alvarez and his friend, Michael O'Neal[,] also drafted letters indicating that the claimant's quality of life has declined over time due to this back pain and that he can no longer fish and ride horses, activities that the claimant previously enjoyed (Exhibit 13E). While the claimant and his friends have described some activities that appear significantly limited, any reported degree of limitations cannot be verified with a reasonable degree of certainty. It is also difficult to attribute the alleged degree of limitation in claimant's activities of daily living to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence to that effect and other factors discussed in this decision.

R. 20-21. Plaintiff argues that this explanation is vague and contains "nonsensical" boilerplate that has been criticized by the Seventh Circuit and district courts. *See Thomas v. Colvin*, 534 Fed. Appx. 546, 551 (7th Cir. 2013) (ALJ's explanation that the claimant's alleged daily activities "cannot be objectively verified with any reasonable degree of certainty" was "nonsensical" and ignored the claimant's daughter's statement confirming his allegations); *Schrock v. Colvin*, 2015 WL 364246, *4 (S.D. Ind. Jan. 27, 2015) ("the ALJ simply ignored that the claimant provided a third-party statement—in this case one was provided by Ms. Schrock's mother—corroborating the claimant's testimony"); *Shelley v. Colvin*, 2014 WL 1653079, *7 (S.D. Ind. Apr. 23, 2014) ("wife's corroborating testimony makes this case nearly identical to *Thomas*").

The Government does not dispute that the ALJ in *Thomas* used "similar language" as did the ALJ here, implicitly conceding that *Thomas* is on point. The Government speculates that the reason that plaintiff no longer fished or rode horses was due to "limited finances." Dkt. #18 at 16. Not only is this argument speculative, it also violates the *Chenery* doctrine because the ALJ never relied on it. The Government finally notes that the ALJ considered other factors, notably objective evidence, in the overall analysis. While true, this point overlooks the critical issue, which is whether there is confirmatory evidence *in addition to* the objective evidence. The Seventh Circuit has stated that reports from claimants and from family and friends should not be ignored solely based on a generalized suspicion about their lack of verifiability. *See Beardsley v.*

*Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Whatever uncertainty may exist around such self-reports is not by itself reason to discount them—otherwise, why ask in the first place?").

In conclusion, the Court notes that the ALJ and medical expert pointed to evidence and arguments that raise valid questions about whether plaintiff's back-related pain was as severe as he claims. Still, for the reasons noted above, this analysis is not complete. However, in remanding this case, the Court is not dictating any particular outcome nor holding that the ALJ's reasons, if more fully explained, cannot be relied on in a future analysis.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: October 11, 2016  By: _____
Iain D. Johnston
United States Magistrate Judge